**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                )
RYAN B. SKUROW,                 )
                                )
           Plaintiff,           )
                                ) Civil Action No. 11-1296(EGS)
        v.                      )
                                )
U.S. DEPARTMENT OF HOMELAND     )
SECURITY and U.S. TRANSPORTATION)
SECURITY ADMINISTRATION,        )
                                )
           Defendants.          )
_____)
```

<u>**MEMORANDUM OPINION**</u>

This case is before the Court on defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment.  Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, defendants' motion is **GRANTED** and plaintiff's cross-motion is **DENIED**.

**I.   BACKGROUND**

Plaintiff, who initially proceeded *pro se* in this action, filed his complaint on July 19, 2011, seeking to compel defendants the United States Department of Homeland Security ("DHS") and the United States Transportation Security Administration ("TSA") to comply with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") and the Privacy Act, 5 U.S.C. § 552a ("Privacy Act").

Plaintiff is a United States citizen currently living in Israel.  In 1998, plaintiff traveled to Israel as a tourist and made an excursion trip with two friends to the Sinai Peninsula in Egypt.  During the course of the trip to Egypt, plaintiff and his friends were stopped by Egyptian police and were searched. As a result of the search, the Egyptian police claimed to have found a small amount of marijuana in the bag of one of plaintiff's friends.  Plaintiff states that all three friends were tried without the assistance of counsel, fined $200, and were returned to Israel.  Plaintiff further alleges that the "entire trial was a farce" and that "plaintiff never used or possessed marijuana as charged by the Egyptian police."  Pl.'s Statement of Material Facts in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot. SOF"), ECF No. 16-2, ¶ 8-9.

Prior to 2007, plaintiff states he had no difficulty traveling between the United States and Israel.  In 2007, however, plaintiff was stopped by a United States Customs and Border Patrol ("CBP") officer in the Miami International Airport and detained for several hours without explanation.  He was stopped again in 2009 while traveling through the Hartsfield-Jackson Atlanta International Airport.  During this stop, plaintiff inquired about the reasons for his detention. Plaintiff alleges that a CBP officer told him that his name

appeared on a "watch list" as a result of the 1998 incident in Egypt.

Between 2008 and 2010, plaintiff made several attempts to clarify the reasons he was stopped and questioned.  These included contacting Congresswoman Jean Schmidt, the Representative for the district in which plaintiff's father lives.  Plaintiff and/or his attorney also made inquiries to the DHS Traveler Inquiry Program ("DHS TRIP").  On August 8, 2010, plaintiff's counsel sent a FOIA/Privacy Act request to the TSA for "all information [it had] relating to" plaintiff.  Compl. ¶ 5.[1]  On August 17, 2010, the TSA sent a letter to plaintiff acknowledging that it had received his request on August 13, 2010.  Compl. ¶ 6.  In that letter, the TSA stated that its goal was to respond to the request within 20 days, but due to the breadth of plaintiff's request, the TSA would invoke a 10-day extension of the request, pursuant to 5 U.S.C. § 552(a)(6)(B). The TSA invited plaintiff to contact their FOIA office if he desired to narrow his request.

---

[1] There is some confusion in the record as to whether plaintiff's request was made pursuant to FOIA or to the Privacy Act.  In plaintiff's August 17, 2010 request to the TSA, he states that he is seeking records pursuant to the Privacy Act.  *See* Compl. Ex. A.  In his appeal, however, his request is referred to as having been made pursuant to FOIA and the Privacy Act.  *See id.* Ex. C.  Because plaintiff has alleged in his complaint that the TSA failed to comply with his FOIA and Privacy Act requests, the Court will treat his request has having been made pursuant to FOIA and the Privacy Act.

On January 13, 2011, after having allegedly not received a response from the TSA, plaintiff's counsel sent a letter to the DHS, reiterating plaintiff's initial request and purporting to appeal the denial of his FOIA/Privacy Act request.  Compl. ¶ 8. On April 8, 2011, DHS sent a letter to plaintiff's counsel informing him that it could not act until a determination was made on whether any responsive records may be released in connection with his request.  Compl. ¶ 10.  DHS advised plaintiff that he could treat the letter as a denial of his appeal and seek judicial review.  *Id*.

After plaintiff filed this action on July 19, 2011, TSA began responding to plaintiff's FOIA request on a rolling basis. On August 4, 2011,[2] TSA sent a letter to plaintiff and attached several documents, including documents that had been redacted pursuant to FOIA Exemptions 3, 6, and 7.[3]  On August 25, 2011, TSA sent plaintiff a supplemental response to his request.  *See* Declaration of Yvonne L. Coates ("Coates Decl."), ECF No. 9-1, Ex. F.  In that letter, the TSA stated that it could neither confirm nor deny whether plaintiff was on a Federal Watch List. Specifically, the TSA stated that pursuant 49 U.S.C. § 114(r) and its implementing regulation at 49 C.F.R. § 1520.15(a),

---

[2] The copy of the letter attached as Exhibit E to the Coates Declaration bears no date but the declaration states that it was sent on August 4, 2011.
[3] Defendants have since withdrawn the redactions made pursuant to Exemption 7.

Federal Watch Lists constitute Sensitive Security Information ("SSI") that is exempted from disclosure.  The TSA stated that it was withholding that information pursuant to FOIA Exemption 3, which allows the withholding of records specifically prohibited from disclosure by another statute.  On October 24 and November 2, 2011, TSA sent plaintiff a second and third supplemental response to his FOIA request, attaching documents that contained redactions pursuant to Exemptions 3 and 6. Coates Decl. Exs. G-H.

On November 2, 2011, defendants moved for summary judgment, arguing that they had conducted an adequate search and produced documents in response to plaintiff's request, and that there were no issues of material fact.  Defendants advised the *pro se* plaintiff of his obligation to respond to the arguments made by plaintiff and cite to supporting factual evidence or those arguments would be deemed conceded.  In their motion, defendants argued that their search was adequate, that information was properly withheld pursuant to FOIA exemptions 3 and 6, and that all reasonably segregable information was released.

In his opposition, plaintiff principally argues that the government acted in bad faith.  Plaintiff also argues that defendants' searches were inadequate and that the exemptions do not apply.  Plaintiff does not address the issue of segregability.  Plaintiff submitted a statement of facts in

dispute, *see* ECF No. 10-3, but did not specifically respond to the factual allegations in defendants' statement or cite to record evidence in support of his statements of disputed fact.

Several weeks after plaintiff filed his *pro se* opposition to defendant's motion for summary judgment on January 26, 2012, counsel appeared on behalf of plaintiff in this action. *See* ECF No. 14. On June 26, 2012, three months after the initial motion for summary judgment was fully briefed, plaintiff filed a cross-motion for summary judgment and a request for attorneys' fees. On July 11, 2012, the Court held a status hearing regarding the pending motions. At the hearing, the Court noted that a Fox/Neal Order had not been issued after the initial summary judgment motion was filed by defendants. The Court informed plaintiff's counsel that it appeared plaintiff had not properly responded to the motion, including to the statement of facts, and asked counsel whether he was satisfied with the opposition that plaintiff had filed. Counsel stated that he was satisfied with the pleadings and had no intention to make any changes. Counsel also confirmed that he had access to the Court's local rules. Accordingly, the Court allowed the briefing on the cross-motion for summary judgment to proceed. That motion, and defendants' initial motion, are now ripe for the Court's decision.

## II.   LEGAL FRAMEWORK

### A. Rule 56

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).

Rule 56 of the Federal Rules of Civil Procedure requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited [by the opposing party] do not

establish the absence or presence of a genuine dispute . . . ."
Fed. R. Civ. P. 56(c).  "If a party fails to properly support an
assertion of fact or fails to properly address another party's
assertion of fact as required by Rule 56(c), the court may . . .
consider the fact undisputed for purposes of the motion."  Fed.
R. Civ. P. 56(e); see Local Civ. R. 7(h) ("In determining a
motion for summary judgment, the court may assume that facts
identified by the moving party in its statement of material
facts are admitted, unless such a fact is controverted in the
statement of genuine issues filed in opposition to the
motion.").  The District of Columbia Circuit has held that "[i]f
the party opposing the motion fails to comply with [Local Civil
Rule 7], then 'the district court is under no obligation to sift
through the record' and should '[i]nstead . . . deem as admitted
the moving party's facts that are uncontroverted by the
nonmoving party's Rule [Local Civil Rule 7(h)] statement.'"  *SEC
v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000)
(citation omitted).  This Circuit has affirmed the grant of
summary judgment where the nonmoving party failed to cite any
evidence in the record, and in the statement of genuine factual
issues, "did not set forth specific, material facts, but simply
asserted, without citing evidence in the record, that there was
a disputed issue[.]"  *Burke v. Gould*, 286 F.3d 513, 518 (quoting
*Tarpley v. Greene*, 684 F.2d 1, 7 (D.C. Cir. 1982)).

## B. FOIA

FOIA requires agencies to disclose all requested agency records, 5 U.S.C. § 552(a), unless one of nine specific statutory exemptions applies, *id.* § 552(b).  It is designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citations omitted).  "Given the FOIA's broad disclosure policy, the United States Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.'" *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).

"FOIA's strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted).  The government may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld. *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary

judgment is warranted on the basis of the affidavit alone."
*ACLU v. Dep't of the Defense*, 628 F.3d 612, 619 (D.C. Cir.
2011); *see id.* (an agency's justification for invoking a FOIA
exemption is sufficient if it appears logical or plausible)
(internal citations omitted).

### C. Privacy Act

The Privacy Act of 1974 regulates the collection,
maintenance, use, and dissemination of an individual's personal
information by agencies within the federal government. *See* 5
U.S.C. § 552a(e).  The Act "'safeguards the public from
unwarranted collection, maintenance, use, and dissemination of
personal information contained in agency records ... by allowing
an individual to participate in ensuring that his records are
accurate and properly used.'" *McCready v. Nicholson*, 465 F.3d
1, 7–8 (D.C. Cir. 2006) (quoting *Bartel v. Fed. Aviation Admin.*,
725 F.2d 1403, 1407 (D.C. Cir. 1984)).  "The Privacy Act—unlike
the Freedom of Information Act—does not have disclosure as its
primary goal." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453,
1456 (D.C. Cir. 1996).  "Rather, the main purpose of the Privacy
Act's disclosure requirement is to allow individuals on whom
information is being compiled and retrieved the opportunity to
review the information and request that the agency correct any
inaccuracies." *Id.* at 1456–57.  To achieve this goal, the Act
"imposes a set of substantive obligations on agencies that

maintain systems of records." *Skinner v. Dep't of Justice*, 584
F.3d 1093, 1096 (D.C. Cir. 2009).  For example, subject to
certain exceptions, an agency that maintains a system of records
must, "upon request by any individual to gain access to his
record . . . permit him . . . to review the record" and to
request amendment of the record.  5 U.S.C. § 552a(d)(1)-(2).

## III. DISCUSSION

As an initial matter, the Court notes that this case is in
a somewhat unusual procedural posture.  As discussed above,
plaintiff proceeded *pro se* through the majority of this
litigation, including the initial summary judgment briefing.
His counsel, who appeared in the litigation shortly after
plaintiff filed his *pro se* opposition to defendants' motion for
summary judgment, has adopted the arguments made by plaintiff in
his opposition to defendants' motion for summary judgment and
did not wish to supplement that briefing.  Plaintiff
subsequently filed a cross-motion for summary judgment.

Plaintiff's response to defendants' statement of material
facts not in dispute fails to specifically controvert
defendants' statements of material fact because it fails to cite
to record evidence.  Although the Court is "under no obligation
to sift through the record" to locate disputed issues of
material fact, the Court has reviewed the pleadings as a whole
in an effort to determine whether there are any disputed issues

of material fact.  Upon review of plaintiff's opposition to defendants' statement of material facts, and plaintiff's own statement of material facts in support of his cross-motion for summary judgment, the Court finds that there are no disputed issues of material fact in this case.  Much of what has been alleged by plaintiff is merely background information that is not in dispute.  For example, plaintiff states that "[i]n or around November 2011, Defendants submitted affidavits from Yvonne Coates and William Benner in an attempt to justify withholding of information requested by plaintiff about himself."  *See* Pl.'s Statement of Genuine Issues in Dispute ("Pl.'s SOF"), ECF No. 10-3, ¶ 23.  This statement is neither in dispute, nor is it material.  The few disputed allegations made by plaintiff relate to legal issues, rather than to issues of fact.  *See, e.g., id*. ¶ 25 (alleging that defendants "improperly maintain[ed] a right to withhold under Exemptions 3 and 6 and a *Glomar* response based on Exemption 3").

Accordingly, as discussed below, the issues to be resolved by the Court are legal and relate to the propriety of defendants' responses to plaintiff's FOIA request.

## A. Adequacy of Search

Defendants argue that their search for documents was adequate and that summary judgment is appropriate.  Plaintiff disagrees, contending that defendants failed to conduct a

12

reasonable and good faith search for responsive documents.  As discussed below, in view of the lack of any specific showing of bad faith on the part of the defendants, the Court finds that their search was adequate.

## 1. Bad Faith

Plaintiff makes several arguments relating to defendants' delay in processing his FOIA request.  Specifically, plaintiff argues that the delay is evidence of defendants' bad faith.  Plaintiff further argues that defendants' claimed exemptions are invalid because of this alleged bad faith.  *See* Pl.'s Opp. to Defs.' Mot. for Summ J. ("Pl.'s Opp."), ECF No. 10, at 14.  The Court disagrees.

Courts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith.  *See, e.g.*, *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("initial delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later affidavits by the agency"); *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 108-09 (D.D.C. 2010) (rejecting argument that agency's failure to produce documents until after litigation commenced evidenced agency's bad faith).  Agency affidavits are afforded a "presumption of good faith" and an adequate affidavit can be rebutted only with evidence that the agency's search was not made in good faith.  *Defenders of*

*Wildlife v. Dep't of the Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  In other words, a requestor cannot rebut the good faith presumption through "'purely speculative claims about the existence of and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1981) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  None of the pleadings filed by plaintiff set forth any factual basis, other than purely speculative claims about the agencies' motives, to suggest that TSA or DHS acted in bad faith.  Accordingly, plaintiff has failed to rebut the presumption of good faith.  Moreover, there is nothing about the failure of an agency to produce documents promptly that would require the agency to waive otherwise properly claimed FOIA exemptions.  An agency's failure to respond within the statutorily prescribed deadlines merely means that a requesting party may seek judicial supervision of the agency's response, as plaintiff has done here.  *See, e.g.*, *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006).

2. TSA's Searches Were Adequate

An agency from which information has been requested must undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by

the appropriateness of the methods used to carry out the search." *Iturralde*, 315 F.3d at 315.  The Court applies a "reasonableness test to determine the adequacy of search methodology," *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), and requires a "reasonable and systematic approach to locating the requested documents." *Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 116 (D.D.C. 2007).  "The agency must demonstrate that it 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Defendants properly rely on a detailed, non-conclusory declaration that demonstrates the adequacy of the search.  *See Weisberg*, 705 F.2d at 1351.  TSA states that, based on plaintiff's request and his allegation of experiencing difficulties traveling, it identified that the TSA offices most likely to have responsive records were the Office of Transportation Security Redress ("OTSR"), the Office of Intelligence ("OI") and the Office of Security Operations ("OSO").  Coates Decl. ¶ 17.  It explains in considerable detail the processes undertaken to search for documents in those

offices.[4]  It further explains the search terms used to conduct
those searches.  The Court finds that these methods could be
"reasonably expected to produce the information requested" and
were therefore adequate.  *See Fischer*, 596 F. Supp. 2d at 43.

Plaintiff attempts to establish that the searches were
inadequate by identifying individual documents that are
allegedly responsive to his requests but which were not
produced.  The documents include: 1) correspondence between CBP
and Congresswoman Jean Schmidt's office regarding plaintiff's

---

[4] Defendants explain that OTSR was deemed to possibly have
responsive records because it administers the DHS TRIP program
under which plaintiff submitted a complaint.  Coates Decl. ¶ 18.
OTSR searched its files and located its record of plaintiff's
complaint.  Coates Decl. ¶ 19.  Based on the information in that
record, OTSR conducted a keyword search of its public email
inbox within a several-month date range surrounding the date of
plaintiff's complaint, as per OTSR's normal practice. Coates
Decl. ¶ 21.  OTSR also searched the email files of employees who
were identified as having worked on plaintiff's complaint.
Coates Decl. ¶ 24.  OI was deemed to have potentially responsive
records because it is in possession of the No Fly and Selectee
lists, and in certain cases, the derogatory information that
supports placement on those lists. Coates Decl. ¶ 26.  OI
searched its email records and its shared drive for information
regarding plaintiff's complaint.  Coates Decl. ¶ 27.  OI found
no documents responsive to the request.  Coates Decl. ¶ 27.  TSA
also searched the No Fly and Selectee lists.  Pursuant to the
TSA's current "Glomar" policy, TSA cannot confirm, nor deny,
whether OI's search of the No Fly and Selectee lists identified
any responsive records.  Coates Decl. ¶ 27.  OSO manages TSA's
domestic security operations and was asked to search its
Performance and Results Information System, a database that
holds records of incidents and inspections at U.S. airports.
Coates Decl. ¶ 29.  OSO ran several keyword searches in the
database but none yielded responsive records.  Coates Decl. ¶
29.

difficulty traveling; 2) an October 2009 letter from plaintiff's
counsel to DHS regarding plaintiff's difficulty traveling; and
3) correspondence between plaintiff's counsel and TSA or DHS
regarding plaintiff's FOIA request.  Plaintiff also claims that
defendants' search was inadequate because it did not search
records from CBP or the FBI.

The Court notes at the outset that plaintiff's FOIA request
was directed to the TSA only.  Compl. Ex. A.  The relevant FOIA
regulation puts the burden on a requesting party to direct his
request to the DHS component from which records are sought.
Defs.' Reply in Support of Mot. for Summ. J. ("Defs.' Reply"),
ECF No. 15, at 3 (citing 6 C.F.R. § 5.3(a) ("You may make a
request for records of the Department by writing directly to the
Department component that maintains those records. . . . Your
request should be sent to the component's FOIA office at the
address listed in Appendix A to part 5.")).  Although the FOIA
regulations provide for mandatory referrals to component
agencies in certain circumstances, defendants argue that the
request did not require a referral to CBP in this case.  This
issue is moot, however, in view of defendants' referral of the
request to CBP after receiving plaintiff's opposition to

defendants' motion for summary judgment.[5]   The Court also finds that plaintiff's claim that TSA should have searched records from the FBI, which plaintiff alleged for the first time in his cross-motion for summary judgment, lacks merit.   The FBI is not a component of DHS and plaintiff has cited now law that would require TSA to search FBI records.

Plaintiff's allegations regarding various correspondence that was not produced in response to his FOIA request falls short of establishing that TSA's search was inadequate.   First, plaintiff points to several letters from plaintiff's counsel. Plaintiff claims that an October 21, 2009 letter from plaintiff's counsel inquiring about the status of plaintiff's FOIA request was not produced.   As explained by the TSA, however, a nearly-identical letter dated November 22, 2009 was produced and a similar electronic version of the letter was located in TSA's files upon further review.   March 7, 2012 Declaration of Yvonne Coates ("March 7 Coates Decl."), ECF No. 15, at ¶¶ 8-9.   The difference in date appears to have been a clerical error and, even if not, is not a material issue with respect to the adequacy of the search. *See* Iturralde, 315 F.3d at 315.

---

[5] The adequacy of the CBP production does not appear to be challenged by plaintiff and, in any event, is not an issue properly before this Court.

18

Plaintiff also argues that TSA's search was inadequate because TSA did not produce several letters from plaintiff's counsel regarding plaintiff's FOIA request.  TSA responds that these documents post-date plaintiff's FOIA request and are accordingly not considered part of his request, which the TSA interpreted as seeking information in existence at the time of the request.  The Court finds this approach reasonable and also notes there is also no particular need to produce back to plaintiff documents that plaintiff or his counsel already have.

Plaintiff also cites to several letters sent to the offices of Congresswoman Jean Schmidt, who is the representative for the Congressional district in which plaintiff's father resides.  These letters include an October 16, 2008 letter from a CBP official to Representative Schmidt, *see* ECF No. 10-2, Ex. A, and an August 16, 2010 letter from a CBP official to Representative Schmidt, *see id.* Ex. D.  Plaintiff cites these letters as further proof that the searches were inadequate.  Plaintiff fails to acknowledge, however, that the letters were sent from CBP, rather than TSA.  Because plaintiff's FOIA request was made to TSA, the Court finds that these letters are not evidence of an inadequate search.

In view of the fact that the reasonableness of a FOIA search is determined, "not by the fruits of the search, but by the appropriateness of the methods used to carry out the

search," *Iturralde*, 315 F.3d at 315, the Court finds that defendants' searches for documents responsive to plaintiff's FOIA request were adequate.

## B. Exemptions

### 1. Exemption 3

Exemption 3 allows an agency to withhold or redact information prohibited from disclosure by another statute if the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In this case, defendants argue that certain documents are exempt from disclosure pursuant to 49 U.S.C. § 114(r) and its implementing regulations at 49 C.F.R. § 1520. Section 114(r) states that, "[n]otwithstanding section 552 of Title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security . . . if the Under Secretary decides that disclosing the information would . . . be detrimental to the security of transportation." The specific regulation on which the defendants rely is 49 C.F.R. § 1520.5(b)(9)(ii), which expressly prohibits from disclosure "[i]nformation and sources

of information used by a passenger or property screening or system, including an automated screening system."[6]

Plaintiff does not challenge whether Section 114(r) qualifies as an Exemption 3 withholding statute.[7]  Rather, plaintiff argues that Section 114(r) does not apply to his case because 1) defendants did not make a decision as to whether it would prevent release of certain documents until after plaintiff's litigation was filed; 2) that even if Section 114(r) prevents release of certain information pursuant to FOIA, it has no effect on plaintiff's claim under the Privacy Act; 3) that the information he is seeking relates only to himself, and is therefore not barred from disclosure under Section 114(r); and (4) that a CBP employee disclosed to plaintiff that his name was on a watch list and, accordingly, any right to withhold that information or respond with a *Glomar* response has been waived.

The Court disagrees.  Plaintiff's claim that defendants have waived their right to withhold information pursuant to

---

[6] Section 144(r) was previously numbered as 114(s) until 2007. Earlier case law and statutes that have not yet been revised refer to the statute by its earlier number.

[7] Several courts, including courts in this district, have considered whether Section 114(r) qualifies as an Exemption 3 withholding statute and have concluded that it does.  *See Tooley v. Bush*, No. 06-306 (CKK), 2006 WL 3783142 (D.D.C. Dec. 21, 2006), *aff'd on rehearing on other grounds*, 586 F.3d 1006 (D.C. Cir. 2009); *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 109-10 (D.D.C. 2005); *Gordon v. FBI*, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004) ("no dispute" that Section 114(r) qualifies as an Exemption 3 withholding statute).

Exemption 3 because they may or may not have designated the information as SSI until after receiving his FOIA request, or indeed, even after this litigation was filed, fails.  Plaintiff cites to no law that would require defendants to designate certain information as SSI prior to a FOIA request or risk waiving their ability to withhold such information.

The Court also rejects plaintiff's argument that the information should be released because plaintiff has requested the information under the Privacy Act, in addition to FOIA. Plaintiff's argument ignores the provision in the TSA's SSI regulation that specifically addresses this issue.  *See* Defs.' Reply at 7 (quoting 49 C.F.R. § 1520.15(a)) ("[N]otwithstanding the Freedom of Information Act (5 U.S.C. 5552), the *Privacy Act* (5 U.S.C. 552(a)), and other laws, records containing SSI are not available for public inspection or copying, nor does TSA . . . *release such records to persons without a need to know*."). Plaintiff has not established that he would qualify as a person with "need to know."  Plaintiff has also not cited any case law in support of his third and related argument that he should receive the records simply because they are about him.

Plaintiff's fourth argument also fails.  Plaintiff alleges that information regarding plaintiff's presence on a watch list should be produced because a CBP official told him that he was on a watch list when he was stopped at the Hartsfield-Jackson

22

Atlanta International Airport in 2009.  In this respect,
plaintiff appears to allege that the waiver doctrine applies.
The D.C. Circuit has held that "when information has been
'officially acknowledged,' its disclosure may be compelled even
over an agency's otherwise valid exemption claim." *Fitzgibbon
v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  In *Fitzgibbon*, the
court identified three requirements to determine whether the
government has waived its right to withhold information by
officially acknowledging it.  Specifically, plaintiff must
establish that the information requested is as specific as the
information previously released, must match the information
previously disclosed, and must have already been made public
through an official and documented disclosure.  *Id*.  Plaintiff
does not attempt to argue that the comment by the CBP official,
even if true, was an "official and documented disclosure."
Furthermore, plaintiff's citation to *Wolf v.* CIA, 473 F.3d 370
(D.C. Cir. 2007) does not support his argument because that case
involved an official admission of the existence of specific
records by a CIA official during a public Congressional hearing.
In contrast, in this case, the alleged disclosure was made by an
unnamed CBP employee while plaintiff was stopped at an airport.
There is nothing official about it, nor was it documented.
Accordingly, plaintiff's waiver claim fails.

**a. Scope of the Court's Review**

Moving on to the Court's review of the information withheld under Exemption 3, defendants argue that this Court lacks jurisdiction to review TSA's designation of the withheld information as SSI.  Under 49 U.S.C. § 46610, a person challenging the TSA's designation of information as SSI "may apply for review of the order by filing a petition in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."

The Court agrees that it lacks jurisdiction to review the substance of the TSA's SSI designations.  *See In re September 11 Litigation*, 236 F.R.D. 164, 175 (S.D.N.Y. 2006); *Shqeirat v. U.S. Airways Group, Inc.*, No. 07-1513 (ADM/AJB), 2008 WL 4232018, *2 (D. Minn. Sept. 9, 2008) ("To the extent that these requests seek Sensitive Security Information ("SSI") and plaintiffs object to U.S. Airways' production of documents after review by the TSA, the Court directs plaintiffs to the Court of Appeals, which have 'exclusive jurisdiction to affirm, amend, modify or set aside' final orders issued by the TSA pursuant to 49 U.S.C. § 114(s).").

Although the Court has found that it lacks jurisdiction to review the TSA's decision to designate certain material as SSI,

the Court must still determine whether the material withheld, as described by TSA, fits within the scope of Section 114(r). *See Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Ass'n of Ret. R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) ("'[T]he sole issue for decision is the existence of a relevant statute and the inclusion of the withheld material within the statute's coverage.'"); *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 126 (D.D.C. 2009).

**b. Documents Redacted Pursuant to Exemption 3**

TSA redacted several documents pursuant to Exemption 3 and 49 U.S.C. § 114(r). Specifically, the redactions indicated as R.1, R.2, R.3, R.4, R.6, R.7, R.10, R.11, and R.21 were redacted because they would "reveal information and sources of information providing insight into passenger screening systems, the knowledge about which would undermine a TSA screening system and therefore be detrimental to transportation security." Declaration of William E. Benner, Jr., ("Benner Decl."), ECF No. 9-2, ¶ 9. The TSA further explains that the information withheld

> may reveal a specific name that may or may not appear on the government "No-Fly" or "Selectee" lists. The information provided in these fields can include notes about people, sources of information, and actions taken by particular agencies that may be used in combination to determine whether an individual is or is not on the "No-Fly" or "Selectee" lists. In addition, the redacted information from an internal electronic mail, labeled R.21, also contains

> information that can be used to determine whether an
> individual is or is not on the "No Fly" or "Selectee"
> lists.  That information is prohibited from disclosure
> under 49 C.F.R. § 1520.5(9)(b)(ii).  The disclosure of
> this information would be detrimental to the security
> of transportation because it would enable those
> planning an attack on an aircraft to identify
> operatives who have or have not previously been
> identified as a threat.

Benner Decl. ¶ 10.  The Court finds that this information, as described, fits squarely within the scope of Section 114(r) and that the information redacted by TSA was appropriately withheld.

### c. Glomar Response Pursuant to Exemption 3

In the TSA's August 25, 2011 supplemental response to plaintiff's FOIA request, the TSA stated that it could neither confirm nor deny whether plaintiff's name was on a Federal Watch List.  Specifically, the TSA stated that pursuant 49 U.S.C. § 114(r) and its implementing regulation at 49 C.F.R. § 1520.15(a), Federal Watch Lists constitute "Sensitive Security Information" that is exempted from disclosure.  The TSA stated that it was withholding that information pursuant to FOIA Exemption 3.  TSA argues that this refusal is a proper *Glomar* response[8] because "the existence of responsive records uncovered during these searches would reveal whether the Plaintiff's name matches an identity" on the lists.  Benner Decl. ¶ 11.  Because the TSA uses these lists for passenger pre-board screening,

---

[8] The term "*Glomar*" response refers to the subject of a FOIA request pertaining to a ship, the Hughes Glomar Explorer, at issue in *Phillipi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

"merely acknowledging the presence or absence of information identifying Plaintiff constitutes SSI." *Id.* ¶ 11 (citing 49 C.F.R. § 1520.5(b)(9)(ii)).  TSA argues that this information must therefore be withheld under Exemption 3.

Plaintiff challenges the justification for the TSA's *Glomar* response as set forth in the declaration of William Benner. Plaintiff asserts that "[w]hen Benner states that it would be endangering national security to reveal to me whether my name is on the list, he is either entering the realm of the Kafkesque [sic] or he has exceeded his authority under Section 114(r)." Pl.'s Opp. at 20.

The D.C. Circuit has recognized that an agency "may refuse to confirm or deny the existence or records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exemption." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).  Here, the TSA argues that FOIA exemption 3, which applies to matters specifically exempted by statute, applies to TSA's Glomar response based on 49 U.S.C. § 114(r) and the implementing regulations at 49 C.F.R. § 1520.5(b)(9)(ii).

The Court finds that the TSA's *Glomar* response to plaintiff's FOIA request was entirely proper and squarely within the realm of its authority.  *See Tooley*, 2006 WL 3783142, at *20 (finding that Glomar response to request regarding a person's presence on TSA watch lists was entirely proper under Section

114(r) where the TSA explained that if the TSA "were to confirm in one case that a particular individual was not on a watch list, but was constrained in another case merely to refuse to confirm or deny whether a second individual was on a watch list, the accumulation of these answers over time would tend to reveal SSI."); *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005) ("Requiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch lists by determining in advance which of their members may be questioned."). Accordingly, the Court finds that defendants have established that TSA properly responded to plaintiff's request for information about whether his name appeared on a watch list by refusing to confirm or deny that information pursuant to FOIA Exemption 3.

  2. Exemption 6

Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). A determination of proper withholding under Exemption 6 requires "weigh[ing] the privacy interest in non-disclosure against the public interest in the release of records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."

28

*Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks omitted).  Moreover, the agency has a duty to engage in this balancing test before deciding whether to disclose or withhold each record.  *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 (D.D.C. 2009).

The information redacted by the TSA pursuant to Exemption 6 includes the "names, initials, position titles, and/or the last four digits of the telephone number of federal employees who are involved in the DHS TRIP process."  Coates Decl. ¶ 37.  TSA determined that the public's interest in the names or other personal information of the federal employees involved in the DHS TRIP process was outweighed by the federal employees' privacy interest in that information.  *Id*. ¶ 38.  TSA determined that the information would provide very little insight into the manner in which the TSA performs its statutory duties.  TSA also considered the likelihood that disclosure would result in harassment and annoyance of TSA employees in light of their involvement in traveler redress activities.

In his opposition, plaintiff appears to mostly concede the Exemption 6 issue.  He states that he has "no qualms with the legal principles applicable to Exemption 6 claims" and then cites several cases relied upon by defendants.  Pl.'s Opp. at 22.  Plaintiff then says that he is "willing to stipulate that

the identities of any third party federal workers be redacted from the documents to be disclosed" to him.  *Id.* at 23.

Upon the Court's review of the redacted documents, the majority very clearly indicate that they bear only minor redactions to the names and other personal identifying information, such as phone numbers, of federal employees who wrote and/or received emails about plaintiff's case.  The Court finds that these redactions were properly made pursuant to Exemption 6 and, in addition, that plaintiff has conceded that defendants may redact personal information about federal employees.

A limited number of redactions made by defendants, indicated as R. 6, R. 7, and R. 10, do not clearly indicate that they are redacting personal information about federal employees. Because the Court has determined that these redactions were properly made pursuant to Exemption 3, *see supra*, the Court need not determine whether they were also properly redacted pursuant to Exemption 6.

**C. Segregability**

Plaintiff does not dispute that all reasonably segregable information was produced to him.  Even after determination that documents are exempt from disclosure, however, FOIA analysis is not properly concluded unless a court determines whether "any reasonably segregable portion of a record" can "be provided to

any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "So important is this requirement that '[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.'" *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 173 (D.D.C. 2011) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106)). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n. 4 (D.C. Cir. 1992) (citations omitted).

"It has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The agency should, for example, "'describe what proportion of the information in [the] documents,' if any, 'is non-exempt and how that material is dispersed through the document[s]." *Elec. Frontier Found.*, 826 F. Supp. 2d at 174 (citing *Mead Data Cent., Inc.*, 566 F.2d 242, 261 (D.C. Cir. 1977)); *see King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (agency must sufficiently identify the withheld material to enable the district court to make a rational

31

decision whether the withheld material must be produced without actually viewing the documents).

Upon review of the documents, the Court finds that defendants have made very limited, specific redactions and have explained in detail the basis for those redactions. *See* Coates Decl. ¶¶ 30-40.  It appears that defendants have redacted only what was necessary to protect the exempt information, and defendants are not withholding any documents in full. Accordingly, the Court finds that all segregable information has been disclosed to plaintiff.

### D. Attorneys' Fees

In his cross-motion for summary judgment, plaintiff argues that he is entitled to attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E)(i).  Plaintiff's request misses a crucial point: plaintiff filed this action *pro se* and his counsel did not enter an appearance until after plaintiff had filed his opposition to defendants' motion for summary judgment.  Accordingly, to the extent plaintiff's counsel has incurred fees, those fees could only be attributed to his work on plaintiff's cross-motion for summary judgment.  That motion advances substantially all of the same arguments made while plaintiff was *pro se* and, as discussed above, plaintiff has not prevailed on any of those arguments. Furthermore, plaintiff did not respond to defendants' arguments regarding the inapplicability of attorneys' fees in his reply,

thereby conceding the issue.  *See Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  Accordingly, the Court finds that plaintiff is not entitled to an award of fees.  *See Elec. Priv. Info. Ctr.*, 811 F. Supp. 2d at 238-39 (fees incurred in preparing unsuccessful motions are properly denied under FOIA); *see Weisberg*, 745 F.2d at 1499.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiff's cross-motion for summary judgment.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**     **Emmet G. Sullivan**
          **United States District Judge**
          **September 26, 2012**